IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERIE INSURANCE EXCHANGE a/s/o JOHN STAVOVY AND MARCIA STAVOVY and MESA WOOD LTD**<br>2200 W. Broad Street<br>Bethlehem, PA 18018<br>       **Plaintiff**<br>   v.<br><br>**LOWE'S HOME CENTERS, LLC**<br>1000 Lowe's Boulevard<br>Mooresville, NC  28117<br>       **Defendant** | Civil Action No: |

## COMPLAINT

Plaintiff, Erie Insurance Exchange a/s/o John Stavovy and Marcia Stavovy, and Mesa Wood LTD ("Plaintiff" or "Erie"), by and through its undersigned counsel, hereby demands judgment against defendant and complains against it as follows:

1. Plaintiff, Erie Insurance Exchange, is a business entity organized and existing under the laws of the Commonwealth of Pennsylvania with its place of business located at 2200 W. Broad Street, Bethlehem, PA 18018.

2. At all times relevant hereto, Erie was duly authorized to engage in the business of insurance in Pennsylvania.

3. At all times relevant hereto, Erie provided property and other insurance to John Stavovy and Marcia Stavovy and Mesa Wood LTD ("subrogors") in connection with property they owned at 880 Airport Road, Washington, PA 15301 ("subject property"), and policies of insurance which were in full force and effect on all relevant dates, and at all relevant times.  As such, as a result of claims made on said policies and payments made pursuant thereto, Erie became subrogated to the rights and interests of the subrogors for any monies paid thereunder,

including the claims giving rise to the within cause of action.

4. Defendant, Lowe's Home Centers, LLC ("Lowe's"), is, upon belief and information and at all times relevant hereto, a North Carolina corporation with its principal place of business at the above-captioned address and was registered to do business within the Commonwealth of Pennsylvania. Lowe's regularly conducts business in Pennsylvania and in this district, is registered to do business in Pennsylvania, has agreed to jurisdiction in Pennsylvania, and purposely avails itself of the Pennsylvania market and of this district for its products.

5. Lowe's is in the business of, *inter alia*, selling, distributing, marketing, assembling, and/or selling domestic consumer appliances/products, including the Idylis brand dehumidifier at issue in this case, which was sold by Lowe's to Plaintiff's subrogors prior to the fire.

## JURISDICTION AND VENUE

6. Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states. Moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

7. Venue is proper in this district based on 28 U.S.C. §1391(a) in that events giving rise to this claim occurred within this district and jurisdiction over defendant arises in this district.

## FACTS

8. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

9. Defendant designed, manufactured, assembled, tested, inspected, marketed, branded, distributed, sold and placed into the stream of commerce the Idylis dehumidifier at issue, with accompanying component parts; said product being intended for use by consumers for the

ordinary purpose associated with dehumidifiers.

10. Prior to August 17, 2018, Plaintiff's insured purchased the Idylis branded dehumidifier (the "subject Dehumidifier") from Lowe's in Washington, Pennsylvania.

11. On or about August 17, 2018, a fire originated at the defective Idylis branded dehumidifier located in the Stavovys' basement.

12. The fire resulted in severe damage to the real and personal property of the Stavovy family, causing them to vacate their home for a reasonable period of time while repairs were made and until their home was restored to its pre-fire condition. In addition, the fire caused other consequential and incidental damages including clean-up costs, debris removal, and other associated expenses.

13. The fire also resulted in severe damage to the personal property of Mesa Wood LTD, causing the business to vacate the property for a reasonable period of time while repairs were made. In addition, the fire caused other consequential and incidental damages including loss of use, and other associated expenses.

14. At all times material hereto, the subject dehumidifier, which was designed, manufactured, assembled, tested, inspected, marketed, distributed, sold and placed into the stream of commerce by Defendant, was not modified, changed altered or abused by the Stavovys or other users at said property prior to or during its use.

15. At all times material hereto, the Defendant knew and intended that its dehumidifier would be used by members of the general public, and knew of the specific uses, purposes and requirements for which said dehumidifier would be utilized.

16. Defendant designed, manufactured, assembled, tested, inspected, marketed, distributed, sold and placed into the stream of commerce the aforesaid subject dehumidifier,

including its component parts, in a dangerous defective condition, which catastrophically failed due to a defect and/or malfunction and caused the fire.

17. As a result of the aforementioned fire and damages sustained by the Plaintiff's subrogors, claims were made on the insurance policy and were duly paid by Erie in excess of $500,000.00.

18. Plaintiff became subrogated to certain rights and interests of its subrogors for monies paid thereunder, including all claims giving rise to the instant cause of action.

## COUNT I – STRICT LIABILITY
## PLAINTIFF v. LOWE'S HOME CENTERS, LLC

19. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

20. Defendant was engaged in the business of designing, testing, inspecting, assembling, manufacturing, marketing, branding, selling and distributing Idylis branded dehumidifiers, and their component parts, and specifically designed, tested, inspected, assembled, manufactured, marketed, branded, distributed, sold and placed into the stream of commerce the dehumidifier at issue in this case.

21. The subject dehumidifier, which was designed, manufactured, sold and/or distributed into the stream of commerce by Defendant, was not modified, changed altered or abused by the Stavovys or other users at said property prior to or during its use.

22. Defendant knew and intended that its dehumidifier would be used by members of the general public, and knew of the specific uses, purposes and requirements for which said dehumidifier would be utilized.

23. Defendant designed, tested, inspected, manufactured, marketed, branded, sold and/or distributed into the stream of commerce the subject dehumidifier, including its component

parts, in a dangerous defective condition, which catastrophically failed due to a defect and/or malfunction and caused the fire.

24. Defendant designed, tested, inspected, manufactured, marketed, branded, sold and/or distributed into the stream of commerce the subject dehumidifier in a defective condition, unreasonably dangerous to the subrogors and their property.

25. Defendant knew, or should have known, that the dehumidifier would, and did, reach users without substantial change in the condition in which originally selected and sold.

26. The dehumidifier was not materially altered in anyway which would affect the dangerous conditions caused and created by Defendant.

27. The Stavovys operated the dehumidifier in the normal, ordinary and intended matter and purpose at all times prior to and on August 17, 2018.

28. The fire and damage to the subrogors property was caused by and/or resulted from the acts and/or omissions of Defendant, by and through its agents, servants, employees and/or representatives, acting within the course and scope of their employment and/or authority for which Defendant is liable to Plaintiff based upon the theory of strict liability for the following reasons:

    a. failing to design, manufacture, inspect, assemble, distribute and/or market a properly functioning and defect-free dehumidifier, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

    b. failing to properly design, manufacture, inspect, assemble, distribute and/or market the dehumidifier free from defect;

    c. failing to properly determine that the dehumidifier, including the electrical wiring to various internal components were not in a safe condition and free of all material defects, which after reasonable and foreseeable use catastrophically failed and/or malfunctioned;

    d. designing, manufacturing, inspecting, assembling, distributing and/or marketing the dehumidifier when they knew or should have known that the dehumidifier was unsafe and unfit for its intended use;

    e. designing, manufacturing, inspecting, assembling, distributing and/or marketing the dehumidifier when it knew or should have known that the dehumidifier would be inadequate for the reasons for which it was

purchased;

f.  designing, manufacturing, inspecting, assembling, distributing and/or marketing the dehumidifier which was unreasonably dangerous, causing the dehumidifier to catastrophically fail and/or malfunction;

g.  designing, manufacturing, inspecting, assembling, distributing and/or marketing an unreasonably dangerous and defective dehumidifier that Defendants knew or reasonably should have known exposed users, such as the Stavovy family to an unreasonable risk of harm;

h.  failing to properly and adequately design, manufacture, inspect, assemble, market, sell, distribute and/or test the dehumidifier and its components, including, but not limited to the electrical wiring or electrical system prior to introducing it into the stream of commerce;

i.  failing to provide adequate and sufficient warnings and instructions with respect to the dehumidifier, which rendered it defective and unreasonably dangerous;

j.  designing, manufacturing, inspecting, assembling, distributing and/or marketing the dehumidifier in a defective condition because its electrical wiring/system connected to various components failed rendering it hazardous and dangerous for its contemplated and intended use;

k.  designing, manufacturing, inspecting, assembling, distributing and/or marketing the dehumidifier in a defective condition because its electrical wiring connected to various internal components failed or malfunctioned in a catastrophic fire condition;

l.  designing, manufacturing, inspecting, assembling, distributing and/or marketing the dehumidifier in a defective condition because its electrical wiring connected to several internal components failed or malfunctioned in a catastrophic fire condition;

m.  the subject dehumidifier is an unreasonably dangerous product one that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics; and

n.  the subject dehumidifier is an unreasonably dangerous because the probability of injury times the gravity of injury under the current product design is more than the cost of an alternative reasonable design plus the diminished utility resulting from modifying the design.

29. The aforementioned defects or defective conditions existed at the time the subject dehumidifier left the possession and/or control of Defendant.

30. The defective, unreasonably dangerous and unsafe condition of the dehumidifier as aforesaid was a direct and proximate cause of the damages sustained by Plaintiff.

31. For these reasons, Defendant is strictly liable to Plaintiff under Section 402A of the Restatement (2d) of Torts and the applicable caselaw of the Commonwealth of Pennsylvania.

32. As a direct and proximate result of the aforementioned defects, the subrogors sustained and incurred severe damage to their real and personal property, causing them to vacate their home for a reasonable period of time while it was restored to its pre-fire condition, and caused other consequential and incidental damages including clean-up costs, debris removal, and other associated expenses.

33. Plaintiff is subrogated to the rights and interests of its subrogors for any claims arising under the policy, as described above, including the claims giving rise to the within cause of action.

**WHEREFORE**, Plaintiff, Erie Insurance Exchange a/s/o John Stavovy and Marcia Stavovy and Mesa Wood LTD, respectfully requests judgment against Defendant in an amount in excess of $500,000.00, plus interest, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT II – NEGLIGENCE
## PLAINTIFF v. LOWE'S HOME CENTERS, LLC

34. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

35. Defendant owed a duty of reasonable care to users, like the Stavovy family, in regard to the design, manufacture, assembly, testing, inspection, marketing and distribution, *inter alia*, of the dehumidifier, and breached said duty.

36. The aforementioned damages were the direct and proximate result of the negligence and carelessness conduct and/or acts or omissions of Defendant, by and through their employees, agents, technicians, vendors, subcontractors, and/or servants, more specifically failing to exercise reasonable care described as follows:

   a. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing and/or marketing a properly functioning and defect-free dehumidifier, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

   b. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing and/or marketing the dehumidifier free from defects;

   c. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing and/or marketing the dehumidifier, including its component parts and the electrical wiring to the component parts, which were not in a safe condition and free of all material defects and after reasonable and foreseeable use catastrophically failed and/or malfunctioned;

   d. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing and/or marketing the dehumidifier when Defendants knew or should have known that the dehumidifier was unsafe and unfit for its intended use;

   e. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing and/or marketing the dehumidifier when Defendants knew or should have known that the dehumidifier would be inadequate for the reasons for which it was purchased;

   f. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing and/or marketing the dehumidifier which had unreasonably dangerous component parts and electrical wiring connected to the component parts, causing the dehumidifier to catastrophically fail and/or malfunction;

   g. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing and/or marketing an unreasonably dangerous and defective dehumidifier that Defendant knew or reasonably should have known exposed users, such as the Stavovy family to an unreasonable risk of harm;

   h. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing and/or marketing the dehumidifier and its

        components prior to introducing it into the stream of commerce;

    i.    carelessly and negligently providing inadequate and insufficient warnings and instructions with respect to the dehumidifier, which rendered it defective and unreasonably dangerous;

    j.    carelessly and negligently designing, manufacturing, inspecting, assembling, distributing and/or marketing the dehumidifier in a defective condition because it failed in a catastrophic fire condition rendering it hazardous and dangerous for its contemplated and intended use; and

    k.    carelessly and negligently designing, manufacturing, inspecting, assembling, distributing and/or marketing the dehumidifier in a defective condition because its electrical wiring connected to various internal components failed or malfunctioned in a catastrophic fire condition.

37. As a direct and proximate result of Defendant's aforementioned actions, and/or omissions, Defendant acted negligently or carelessly, and is therefore liable to the Plaintiff for the damages it sustained.

38. As a direct and proximate result of the aforementioned negligence and careless conduct of Defendant, Plaintiff's subrogors sustained and incurred damage to their real and personal property, causing them to vacate their home for a reasonable period of time until it was restored to its pre-fire condition, and caused other consequential and incidental damages including clean-up costs, repair, and other associated expenses in an amount in excess of $500,000.00.

39. Plaintiff is subrogated to the rights and interests of its subrogors for any claims arising under the policy, as described above, including the claims giving rise to the within cause of action.

**WHEREFORE**, Plaintiff, Erie Insurance Exchange a/s/o John Stavovy and Marcia Stavovy and Mesa Wood LTD, respectfully requests judgment against Defendant in an amount in excess of $500,000.00, plus interest, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT III - BREACH OF WARRANTIES
## PLAINTIFF v. LOWE'S HOME CENTERS, LLC

40. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

41. At the time of the sale and/or distribution of the subject product, Defendant had reason to know the particular purpose to which the subject product would be used (i.e. residential application) and they were being relied upon to furnish a suitable product. Thus, Defendant breached the implied warranty of fitness for a particular purpose as set out in the Uniform Commercial Code (hereinafter "UCC") at 13 Pa. C.S.A. § 2-315 in that the subject product was not fit for the particular purpose for which such products are required as it was prone to failure and ignition under normal operation.

42. In addition, Defendant breached its implied warranty of merchantability as set out in 13 Pa. C.S.A. § 2-314 (c) in that the subject product was not fit for the ordinary uses for which the subject product was used.

43. In addition, Defendant breached any and all express warranties made or relating to the subject product that became part of the basis of the bargain for sale of the product in derogation of 13 Pa. C.S.A. § 2-313. (Defendant has better access to said warranties and, therefore, is not prejudiced by them not being attached hereto).

44. Plaintiff's damages as set forth above occurred as a direct and proximate result of the breach by Defendant of its implied warranties of fitness for a particular purpose and merchantability as set out in 13 Pa. C.S.A. § 2-315 and § 2-314 (c) and as a result of the breach of its expressed warrantees in derogation of 13 Pa. C.S.A. § 2-313.

45. Plaintiff has met any and all conditions precedent to recovery for such breaches.

**WHEREFORE**, Plaintiff, Erie Insurance Exchange a/s/o John Stavovy and Marcia Stavovy and Mesa Wood LTD, respectfully requests judgment against Defendant in an amount in excess of $500,000.00, plus interest, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**de LUCA LEVINE LLC**

BY: /s/Richard J. Boyd, Jr.
**RICHARD J. BOYD, JR.**
PA ID: 84035
Three Valley Square, Suite 220
Blue Bell, PA 19422
215-383-0081
215-383-0082 (fax)
rboyd@delucalevine.com
**ATTORNEYS FOR ERIE INSURANCE EXCHANGE A/S/O JOHN STAVOVY AND MARCIA STAVOVY AND MESA WOOD LTD**

**Dated:** January 20, 2020